**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STRUCTURE PROBE INC.,

        *Plaintiff*,

    v.

EMS ACQUISITION CORP. (d/b/a, ELECTRON
MICROSCOPY SCIENCES),

        *Defendant*.

Case No. 07-CV-3893 (LBS)

**FILED ELECTRONICALLY**

**<u>DECLARATION OF MICHAEL J. FRENO</u>**
**<u>IN OPPOSITION TO EMS'S MOTION TO TRANSFER</u>**

I, Michael J. Freno, hereby declare as follows:

1.      I am an attorney-at-law of the State of New York and an associate of Kenyon &
Kenyon LLP, attorneys for plaintiff Structure Probe Inc. ("SPI").

2.      Annexed hereto are true and correct copies of the following documents:

| | |
|---|---|
| Exhibit 1 | *Mattel, Inc. v. Adventure Apparel*, No. 00-4085 (RWS), 2001 WL 286728 (S.D.N.Y. Mar. 22, 2001) |
| Exhibit 2 | *EMS Acquisition Corp. v. Structure Probe Inc.*, Case No. 2:07-cv-3084-JG, Complaint (excluding exhibits) (E.D. Pa. filed Jul. 27, 2007). |
| Exhibit 3 | *EMS Acquisition Corp. v. Structure Probe Inc.*, Case No. 2:07-cv-3084-JG, Amended Complaint (excluding exhibits) (E.D. Pa. filed Sept. 19, 2007). |
| Exhibit 4 | *Charter One Auto Finance Corp. v. National Vehicle Imports, LLC*, No. 04-6099 (CJS), 2005 WL 2886006 (W.D.N.Y. Sep. 16, 2005) |

Exhibit 5          Defendant Structure Probe Inc.'s Memorandum in Support of Its Motion to Transfer This Action to the Southern District of New York

I declare under penalty of perjury that the foregoing is true and correct.

_____
MICHAEL J. FRENO

DATED:  October 9, 2007
       New York, New York

# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2001 WL 286728 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Mattel, Inc. v. Adventure Apparel
S.D.N.Y.,2001.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
MATTEL, INC., Plaintiff,
v.
ADVENTURE APPAREL, Defendant.
**No. 00 CIV. 4085(RWS).**

March 22, 2001.

Perkins & Dunnegan, New York, By William Dunnegan, Esq., Annmarie Croswell, Esq., Of Counsel, for Plaintiff Mattel, Inc.
Jeffrey Groch, d/b/a Adventure Apparel, Defendant Pro Se, Tucson, AZ.

OPINION
SWEET, D.J.
**\*1** *Pro se* Defendant Adventure Apparel ("Adventure") has moved to dismiss the complaint in this action for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(6), for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), and for improper service of process, pursuant to Federal Rule of Civil Procedure 12(b)(5). Plaintiff Mattel, Inc. ("Mattel") has cross-moved for leave to amend the complaint to add Jeffrey Groch ("Groch") as a defendant. For the reasons set forth below, the motion to dismiss is denied, the cross-motion to amend the complaint is granted, and the parties are directed to brief the issue of whether transfer of this action to the United States District Court for the District of Arizona, Tucson Division, is appropriate.

*The Parties*

Mattel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in El Segundo, California.

Adventure is a retail store located in Tucson, Arizona, and of which Groch is the sole proprietor.

*Prior Proceedings*

This action was initiated by the filing of a complaint on June 1, 2000, by Mattel, asserting claims under the Lanham Act for cybersquatting, 15 U.S.C. § 1125(d), trademark dilution, 15 U.S.C. § 1125(c), and trademark infringement, 15 U.S.C. § 1114(a), and a common law unfair competition claim.

On August 8, 2000, an answer to the complaint was filed. On January 15, 2001, the instant motion to dismiss was received by chambers.[FN1] On January 26, 2001, Mattel's cross-motion was filed. Submissions were received regarding both motions, and the matter was deemed fully submitted on February 7, 2001.

> FN1. The motion to dismiss was not filed directly with the Clerk of the Court, as it should have been. However, in light of the defendant's *pro se* status, and given that Mattel was properly served, this technical error will be disregarded and the Court will ensure that the motion is properly docketed and filed.

*Facts*

The facts set forth herein are gleaned from the pleadings and affidavits, and are construed in the light most favorable to Mattel. They do not constitute findings by the Court.

Adventure sells tanning sessions and swim wear and has two locations, both in Tucson, Arizona.

In January 2000, Adventure developed a web site on the internet. The domain name for this site is "adventureapparel.com," and it is hosted by Yahoo, a company located in California.

Groch has also registered the internet domain names "barbiesbeachwear.com" and "barbiesclothing.com." These names are registered with Network Solutions, a firm located in Virginia, and are "parked" at the Adventure site pursuant to that firm's registration requirements.[FN2] The "barbiesbeachwear.com" and "barbiesclothing.com" names are not registered with any search engine.

> FN2. The term "parked" is drawn from Adventure's submissions, and the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 286728 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

significance of this term has not been fully explained by Adventure. The implication, however, is that "barbiesbeachwear.com" and "barbiesclothing.com" are not web sites separate and apart from the adventureapparel.com site. In any event, it is immaterial for purposes of the instant motion whether these names represent separate web sites or, rather, can only be accessed through the adventureapparel.com site.

Adventure's web site has produced one sale. On April 11, 2000, Michael Falsone ("Falsone") of New York visited barbiesbeachwear.com and ordered a pair of hosiery with his American Express card. Falsone is an investigator for Mattel. Although the site was listed as "not open for business," the order was honored, and the hosiery were shipped to Falsone at 5 Hanover Square, 12th Fl ., New York, NY, 10004, which is an address located within the Southern District of New York. Falsone received a confirmation e-mail regarding his order on April 13, 2000. The sender identified in this e-mail was "adventureapparel@aol.com," and the recipient was Falsone, at "mikestone9 @aol.com." The e-mail provided an internet address at which the current status of the order could be checked at any time.

*Discussion*

I. *This Court Has Personal Jurisdiction*[FN3]

> **FN3.** The motion to dismiss is addressed to the issue of personal jurisdiction as to both Adventure and Groch, since it is contended that Groch, not Adventure, is the proper party in interest. For the sake of convenience, the defendant will be referred to as Adventure in addressing the challenge to personal jurisdiction and venue.

**\*2** The burden on Mattel at this stage of the proceedings is to establish a *prima facie* case of personal jurisdiction. *See Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 768 (2d Cir.1983); *Pilates, Inc. v. Pilates Inst., Inc.,* 891 F.Supp. 175, 178 (S.D.N.Y.1995). The facts gleaned from the pleadings and affidavits are to be construed in the light most favorable to Mattel. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Ultimately, if a jurisdictional challenge is

raised at trial, Mattel will bear the burden of establishing jurisdiction over the defendant by a preponderance of the evidence. *See Hoffritz,* 763 F.2d at 57;*Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc.,* 10 F.Supp.2d 334, 338-39 (S.D.N.Y.1998).

In determining personal jurisdiction a federal court looks first to the law of the forum state. *See Bensusan Rest. Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). If jurisdiction is proper under the relevant state statute, it must then be determined whether the exercise of jurisdiction comports with due process. *See id.*The relevant state statute here is New York's long-arm jurisdiction statute. *See*N.Y. C.P.L.R. § 302 (McKinney 1990).

Mattel asserts that personal jurisdiction is proper under the transacting business prong of the New York long-arm statute, which provides:
As to a cause of action arising from any acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent ... (1) transacts any business within the state or contracts anywhere to supply goods or services in the state.

N.Y. C.P.L.R. § 302(a)(1) (McKinney 1990).

The "jurisdictional net cast by CPLR § 302(a) subsection (1) ... reaches only a defendant that purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its law."*Viacom Intern., Inc. v. Melvin Simon Prods.,* 774 F.Supp. 858, 862 (S.D.N.Y.1991) (internal citations and quotation marks omitted). New York courts look to the totality of circumstances to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy. *See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, 75 (N.Y.1965).

A single transaction of business is sufficient to give rise to jurisdiction under CPLR § 302(a)(1), even where the defendant never enters the state, "provided that the defendant's activities were purposeful, and that there was a substantial relationship between the transaction and the claim asserted."*Pilates,* 891 F.Supp. at 179;*see, e.g., Student Advantage, Inc. v. International Student Exch. Cards, Inc.,* No. 00 Civ.1971, 2000 WL 1290585, at *3 (S.D.N.Y. Sept.13, 2000); *Citigroup Inc. v. City Holding Co.,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

97 F.Supp.2d 549, 564 (S.D.N.Y.2000) (citing cases); *Kreutter v. McFadden Oil Co.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40, 43 (N.Y.1988).

**\*3** In this case, the infringing activity alleged by Mattel occurred via the internet. Courts considering the issue of when internet activity provides personal jurisdiction over a defendant have identified a range of fact patterns. *See Citigroup,* 97 F.Supp.2d at 565;*see also, e.g., Student Advantage,* 2000 WL 1290585, at \*4 (discussing range of cases); *National Football League v. Miller,* 54 U.S.P.Q.2d 1574, 1575 (S.D.N.Y.2000) ("[O]ne does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit. However, one who uses a web site to make sales to customers in a distant state can thereby become subject to the jurisdiction of that state's courts.") (citations omitted). At one end of the spectrum are "passive" web sites, where the defendant merely makes information available on a web site, and in which situation personal jurisdiction is not conferred. *See Citigroup,* 97 F.Supp.2d at 565. At the other end are cases where the defendant clearly does business over the internet, such as by knowingly and repeatedly transmitting computer files to customers in other states, and in which situation there is personal jurisdiction. *See id.*Occupying the middle ground are cases in which the defendant maintains a web site that is interactive insofar as it permits the exchange of information between users in another state and the defendant, and in which situation whether there is personal jurisdiction depends on the level and nature of the exchange. *See id.*

Here, Falsone ordered allegedly infringing merchandise from Adventure over its web site, using his credit card, and Adventure shipped that merchandise into New York. This activity not only involved the exchange of payment and shipping information but, moreover, was a commercial transaction that was actually consummated on line. These activities were sufficient to bring Adventure into the category of a defendant "transact[ing] any business," via the internet, in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1).*See Student Advantage,* 2000 WL 1290585, at \*4;*Citigroup,* 97 F.Supp.2d at 565-66 and n. 8. In addition, Adventure e-mailed a confirmation to Falsone and in that e-mail provided him with a web site address where he could obtain information regarding the status of his order. This additional interactive activity further supports the exercise of personal jurisdiction over the defendant. *See Citigroup,* 97 F.Supp.2d at 565.

(discussing middle ground "exchange of information" cases).

Adventure points out that the sale was to Mattel's investigator, and contends that personal jurisdiction cannot be premised on such trickery. Adventure also maintains that personal jurisdiction cannot be based on a single contact. The fact that the sale was made to an agent of Mattel is irrelevant. The fact that there was only one transaction does not vitiate personal jurisdiction due to the nature of the contact, that is, because Adventure's activities were purposeful and there was a substantial relationship between the transaction and the claim asserted. *See, e.g., Student Advantage,* 2000 WL 1290585, at \*3;*Citigroup,* 97 F.Supp.2d at 564 (S.D.N.Y.2000).

**\*4** Adventure also contends that Mattel's claims do not "arise from" the sale to Falsone, as required by the statute, but, rather, relate to Adventure's registration of the allegedly infringing domain names and the parking of those domain names at Adventure's web site. *See*N.Y. C.P.L.R. § 302(a)(1) (McKinney 1990). However, Mattel's causes of action for trademark dilution and infringement and for unfair competition "arise[ ] from this transaction of business because it is 'precisely the bona fides of these products ... that [Mattel] challenges." ' *Citigroup,* 97 F.Supp.2d at 566 (*quoting Pilates, Inc.,* 891 F.Supp. 175, 179 (S.D.N.Y.1995)). Therefore, personal jurisdiction is proper.

Finally, there were "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In reaching this conclusion, the relevant factors have been considered, *see Metropolitan Life Ins. Co. v. Robert-Ceco Corp.,* 84 F.3d 560, 567-69 (2d Cir.1996) (setting forth factors for determining whether exercise of personal jurisdiction reasonable under circumstances of case), as well as Adventure's argument that Mattel's trickery renders the exercise of personal jurisdiction by this Court violative of due process.

II. *Venue Is Proper In This District*

Where a case is filed in an improper venue, the court "shall dismiss ... or if it be in the interest of justice, transfer such case to any district in which it could have been brought."28 U.S.C. § 1406(a).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 4
Not Reported in F.Supp.2d, 2001 WL 286728 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Venue in trademark cases is governed by the federal venue statute, 28 U.S.C. § 1391, which states in relevant part:

a civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ....

28 U.S.C. § 1391(b)(2); *see Pilates,* 891 F.Supp. at 182.

The venue requirement "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred."*Metropolitan Opera Assoc., Inc. v. Naxos of America, Inc.,* No. 98 Civ. 7858, 2000 WL 987265, at *3 (S.D.N.Y. July 18, 2000) (internal quotation marks and citation omitted). The burden is on the plaintiff to demonstrate that a substantial part of the events or omissions giving rise to the claim occurred in this district. *See id.*

"[I]n trademark infringement claims, courts have held that venue may be proper in each jurisdiction where infringement is properly alleged to have occurred."*Metropolitan Opera,* 2000 WL 987265, at *3 (internal citation and quotation marks omitted). At a minimum, "the defendant must have targeted its marketing and advertising efforts at the district in question, *or have actually sold its products there.*" *Id.* (internal quotation marks and citation omitted) (emphasis added).

**\*5** The principles which govern the personal jurisdiction inquiry in cases involving infringing activity conducted via the internet are also applicable to the venue issue. *See Hsin Ten Enter. USA, Inc. v. Clark Enters.,* No. 00 Civ. 5878, 2000 WL 1886583, at *8 (S.D.N.Y. Dec.29, 2000) (citing cases); *Metropolitan Opera,* 2000 WL 987265, at *3-*4 and n. 4. Under the personal jurisdiction analysis set forth above, venue is proper in this district based on the internet sale by Adventure to Falsone of an allegedly infringing product, because this sale means that a substantial part of the events giving rise to the claims occurred here. *See id.*Therefore, the motion to dismiss for improper venue is denied.

III. *Amendment Of The Complaint Will Be Permitted*

Mattel does not dispute that Adventure is a sole proprietorship owned by Groch and, therefore, that Adventure is not a separate legal entity capable of being sued. However, "[t]he service upon a trade name with no separate jural existence will not bar [a] suit against [the owner] if [he] was 'fairly apprised' of this suit."*Darby v. Campagnie Nat'l Air France,* 132 F.R.D. 354, 355 (S.D.N.Y.1990) (*quoting Anastasiou v. Fulton Street Pub,* 133 A.D.2d 796, 520 N.Y.S.2d 178 (N.Y.App.Div.1987)). Groch is the sole proprietor of Adventure and has been representing Adventure *pro se.*Thus, he was fully apprised of the suit and of the fact that he is the real party in interest. Amendment of the complaint to name Groch as the proper defendant is appropriate under Federal Rule of Civil Procedure 15(a).

Adventure opposes Mattel's motion to amend the complaint on the ground that there is no personal jurisdiction over Groch-for the same reasons, it is asserted, that there is no jurisdiction over Adventure, since they are really one and the same. However, as explained above, this court does have personal jurisdiction over the defendant.

Finally, Mattel maintains that Adventure should remain a named defendant because it is the registrant of the domain names in suit. Mattel cites no authority for the proposition that an entity which is not capable of being sued may nonetheless be maintained as a defendant on this ground. However, it is proper to identify a trade name under which a sole proprietor is doing business. Therefore, Mattel may amend the complaint to substitute "Jeffrey Groch d/b/a Adventure Apparel" as the defendant instead of Adventure.

IV. *The Parties Are Directed To Brief The Issue Of Whether Transfer Is Appropriate*

Under 28 U.S.C. § 1404(a), [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Although Adventure has not moved in the alternative to transfer venue, the Second Circuit has noted that "[t]he broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer *sua sponte....* [and] those [cases] that have arisen suggest such power does exist."*Lead Indus. Ass'n v. Occupational Safety & Health Admin.,* 610 F.2d 70, 79 n. 17 (2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 5
Not Reported in F.Supp.2d, 2001 WL 286728 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Cir.1979) (citing cases), and district courts within this circuit have followed this practice where deemed appropriate, *see, e.g., Smith v. City of New York, 950 F.Supp. 55, 59-60 (E.D.N.Y.1996).* However, as a rule, notice and an opportunity to be heard on this issue should be provided. *See Saferstein v. Paul, Mardinly, Durham, James, Flandrea & Rodger, P.C., and Rodger, 927 F.Supp. 731, 737 (S.D.N.Y.1996)* (citing cases). Although Adventure's motion to dismiss is premised largely on the contention that being forced to litigate this action in this forum is unduly burdensome-an argument which goes directly to whether transfer is warranted-the transfer issue has not been briefed.

**\*6** Therefore, Groch shall file and serve any submissions regarding the appropriateness of a transfer to the United States District Court for the District of Arizona, Tucson Division, by March 28, 2001; Mattel shall respond by April 4, 2001; and Groch shall reply by April 11, 2001. The matter will be decided on submission.

Mattel has filed a motion for summary judgment, currently returnable March 28, 2001. The return date for that motion is adjourned until May 1, 2001.

### Conclusion

Therefore, for the reasons set forth above, the motion to dismiss is denied, the cross-motion to amend the complaint is granted, and the parties are directed to brief the issue of whether transfer to the United States District Court for the District of Arizona, Tucson Division, is appropriate.

It is so ordered.

S.D.N.Y.,2001.
Mattel, Inc. v. Adventure Apparel
Not Reported in F.Supp.2d, 2001 WL 286728 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

WOODCOCK WASHBURN LLP
Steven J. Rocci
Chad A. Rutkowski
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
Tel:    (215) 568-3100
Fax:    (215) 568-3439
**Attorneys for Plaintiff EMS Acquisition Corp.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMS ACQUISITION CORP., | : | |
| | : | Case No. |
| Plaintiff | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | **COMPLAINT FOR DECLARATORY** |
| STRUCTURE PROBE INC., | : | **JUDGMENT OF INVALIDITY** |
| | : | **OF U.S. COPYRIGHT,** |
| Defendant. | : | **NONINFRINGMENT OF COPYRIGHT,** |
| | : | **NONVIOLATION OF THE LANHAM** |
| | : | **ACT AND NONVIOLATION OF** |
| | : | **STATE STATUTORY AND COMMON** |
| | : | **LAW** |
| | : | |

Plaintiff, EMS Acquisition Corp., by and through its attorneys, and for its complaint against Defendant, Structure Probe, Inc., states:

**THE PARTIES**

1.    EMS Acquisition Corp.  ("EMS") is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 1560 Industry Road, Hatfield, Pennsylvania .

1

2.    In a pleading in another action, Defendant, Structure Probe, Inc. ("SPI"), has alleged that it is a corporation organized under the laws of the State of Delaware having a place of business at 569 East Gay Street, West Chester, Pennsylvania.

## JURISDICTION AND VENUE

3.    This is an action for declaratory judgment, brought under 28 U.S.C. §§ 2201 and 2202, which action concerns a controversy arising under the Copyright Act of the United States, as well as the Lanham Act.

4.    This Court has jurisdiction by virtue of the fact that this is a civil action arising under 28 U.S.C. §§ 2201 and 2202 and under the Copyright Act of the United States, 15 U.S.C. § 101, et seq., as well as the Lanham Act, 15 U.S.C. §1125(a), jurisdiction being expressly conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

5.    This Court has personal jurisdiction over SPI because, on information and belief, SPI is present, maintains its principal place of business, and has and is conducting business, and/or has conducted business in the Commonwealth of Pennsylvania and within this District.

6.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(c).

7.    An actual case or controversy has arisen between the parties based on SPI's assertions that EMS unlawfully copied and used the HTML language and text from certain of SPI's website pages in violation of the Copyright Laws of the United States, and further asserted that  EMS's alleged copying is likely to cause confusion amongst consumers, and otherwise constitutes unfair competition under the Lanham Act.  On or about May 17, 2007, SPI filed a defective complaint for copyright infringement, federal unfair competition, and state unfair competition under the laws of the State of New York against EMS in the United States District

Court in the Southern District of New York ("the New York Complaint"). SPI has not served

this Complaint upon EMS. A copy of the New York Complaint is attached as Exhibit A.

## FACTUAL BACKGROUND

### I.      EMS Acquisition Corp., Inc.

8.      EMS is a privately-held company focused on the manufacture, development, and

distribution of chemicals, supplies and equipment for use in the microscopy, histology, and

related fields.

9.      In addition to products it manufactures itself, EMS sells thousands of products

from third party manufacturers. These products include embedding resins, adhesives and other

embedding materials for suspending specimens that are to be scanned by electron microscopes or

viewed under conventional light microscopes, as well as machines designed for the cleaning,

ashing, and etching of specimens.

10.     EMS operates a website, www.emsdiasum.com/microscopy/default.aspx, in

which it markets, promotes and advertises third party products sold by it. EMS provides

information regarding these products on its websites, which are often verbatim reproductions of

specifications and user information provided by the third party manufacturer itself. As this

information is provided to further the sale of the third party manufacturers' products, EMS's use

of this material is with the consent of such third party manufacturers.

### II.     Structure Probe, Inc.

11.     SPI has alleged in the New York Complaint that it is a manufacturer, retailer and

distributor of analytical equipment and supplies.

12.     Upon information and belief, SPI sells many of the same products as EMS.

13.     SPI has also alleged in the New York Complaint that, like EMS, SPI markets,

promotes and advertises these products on a website it operates, www.2spi.com. SPI provides

information on such products very similar to the information provided by EMS, including product specification data and user information.

**III.    SPI's Claims of Ownership in Product Information**

14.    In the New York Complaint, SPI has alleged that it is the "creator" of "certain webpages, images, text and artwork" on its website.

15.    SPI alleges in the New York Complaint that EMS copied several of its webpages. However, the only webpages identified by SPI as having been allegedly copied by EMS relate to product specifications and user information for nine products manufactured by third party manufacturers—1) LEIT-C-Plast Carbon Cement; 2) Plasma Prep II/EMS 1050 Plasma Asher; 3) BioBond Tissue Adhesive; 4) LR White resin; 5) LR Gold Resin; 6) SPI Diffraction Standars, TEM; 7) Tempfix Mounting Adhesive; 8) SIRA Calibration Specimen Set; and 9) Biomount Tissue Section Mounting Medium. *See* Ex. A.

16.    The information that SPI claims was "copied" by EMS was in fact provided by the third party manufacturers themselves, or are nothing more than unoriginal or public domain facts and figures generally used to describe the characteristics of the products being sold by both EMS and SPI.

17.    In fact, SPI does not claim copyright ownership in the vast majority of the product information webpages it claimed EMS "copied".  Rather, SPI claims to own the copyright in only one such product information, the Plasma Prep II User's Manual. *See* pars 15-22, Ex. A.

18.    However, upon information and belief, EMS believes that discovery will reveal that SPI's "Plasma Prep II User's Manual" is in fact itself a mere copy of a twelve year old user's manual created by March Instruments, Inc. for the "Emitech K1050X Plasma Asher Instruction Manual."

19.    Accordingly, SPI's registration with the Copyright Office of the United States is false and misleading, as it claims ownership in a work that SPI did not itself author.

## COUNT I

## Invalidity of Copyright

20.    EMS incorporates by reference the allegations contained in the paragraphs above as if same were more fully set forth herein.

21.    SPI claims to be the owner of a copyright in the work entitled "Plasma Prep II User's Manual."  However, the "Plasma Prep II User's Manual" is in fact a mere copy of the manual created by March Instruments, Inc., such that the "Plasma Prep II User's Manual" is not an original work subject to copyright protection, and SPI is not the author thereof.

22.    In view of the foregoing, the Court should order that SPI's copyright in the "Plasma Prep II User's Manual" is invalid.

23.    An actual, present and justiciable controversy has arisen between EMS and SPI concerning EMS's posting of information regarding the EMS 1050 Plasma Asher on EMS's website, as SPI claims this posting infringes SPI's copyright in the "Plasma Prep II User's Manual."

24.    EMS seeks a declaratory judgment from this Court that SPI's claimed copyright in the "Plasma Prep II User's Manual" is invalid.

## COUNT II

## Declaratory Judgment of Non Infringement of Copyright, 15 U.S.C. § 101 et. seq.

25.    EMS  incorporates by reference the allegations contained in the paragraphs above as if same were more fully set forth herein.

26.     SPI has claimed that EMS has infringed its copyright in the "Plasma Prep II User's Manual" by virtue of EMS's posting of information regarding the EMS 1050 Plasma Asher on EMS's website.

27.     An actual, present and justiciable controversy has arisen between EMS and SPI concerning EMS's posting of information regarding the EMS 1050 Plasma Asher on EMS's website.

28.     EMS does not violate SPI's alleged rights under the Copyright Laws, or any other federal or state, statue, or common laws.

29.     SPI has suffered no damages as a result of EMS's alleged violations.

30.     EMS seeks a declaratory judgment from this Court that its posting of information regarding the EMS 1050 Plasma Asher on EMS's website does not violate any copyright owned by SPI, constitutes "fair use" of such copyrighted material, and otherwise does not infringe any copyright owned by SPI.

## COUNT III

### Declaration of Non-Violation of the Lanham Act, 15 U.S.C. §1125(a)

31.     EMS  incorporates by reference the allegations contained in the paragraphs above as if same were more fully set forth herein.

32.     SPI has claimed that inclusion by EMS of embedded website links from EMS's website to SPI's website, which have since been removed, are likely to cause confusion among consumers that SPI and EMS are somehow affiliated.  *See* par 25, Ex. A.

33.     SPI has also claimed that EMS's use of product information on its website constitutes false advertising under the Lanham Act.  *Id.*

34.    The inclusion by EMS of an link to SPI's website was temporary and inadvertent, caused no actual confusion among consumers, and was never likely to cause any confusion.

35.    Moreover, the product information included by EMS regarding the products sold by both EMS and SPI was not copied from SPI, was objectively true, and does not otherwise constitute false advertising under the Lanham Act.

36.    Moreover, SPI has suffered no damages as a result of EMS's allegedly wrongful conduct.

37.    Moreover, SPI's Lanham Act claim is preempted by the Copyright Act.

## COUNT IV

### Declaration of Non-Violation of New York State Law

38.    EMS  incorporates by reference the allegations contained in the paragraphs above as if same were more fully set forth herein.

39.    SPI has claimed that EMS violated New York State common law and New York Gen.Bus.Law §§ 349 and 350 by copying SPI's webpages.

40.    Neither EMS nor SPI are located in New York, none of the acts of which SPI complains originated in New York or had meaningful effects in New York, and EMS has not otherwise availed itself of the laws of the State of New York.

41.    Accordingly, New York does not apply to any of the conduct complained of by SPI.

42.    The product information included by EMS regarding the products sold by both EMS and SPI was not copied from SPI, was objectively true, did not cause any actual confusion amongst consumers, and was never likely to cause any consumer confusion.

43. Moreover, SPI has suffered no damages as a result of EMS's allegedly wrongful conduct.

44. Moreover, SPI's Lanham Act claim is preempted by the Copyright Act.

## PRAYER FOR RELIEF

WHEREFORE, EMS respectfully requests that the Court:

45. Enter judgment according to the declaratory relief sought;

46. Preliminarily and permanently enjoin SPI from asserting that EMS's use of product information on its webpage infringes any rights of SPI;

47. Declare that SPI is not the author or have any copyright in the work entitled "Plasma Prep II User's Manual".

48. Declare the copyright in the work entitled "Plasma Prep II User's Manual" to be invalid.

49. Declare that EMS's website pages do not violate any rights of SPI under the Copyright Act, the Lanham Act, or any state statutory or common law;

50. Declare that EMS's temporary inclusion of an SPI website link was not likely to cause confusion between EMS and SPI or to cause mistake, or to deceive as to the affiliation, connection, or association of EMS with SPI, or as to the origin, sponsorship or approval by SPI of EMS's products and services;

51. Declare that SPI's claims under the Lanham Act and state statutory and common law are preempted by the Copyright Act;

52. Declare that New York statutory and common law is inapplicable to any claim asserted by SPI.

8

53.    Declare that SPI suffered no damages as a result of any conduct of EMS relating to EMS's website;

54.    Award EMS its costs and expenses of this civil action together with reasonable attorneys' fees; and

55.    Enter any other relief to which EMS is entitled as a matter of law or equity, or which the Court determines to be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, EMS hereby demands a jury trial on all issues so triable.

Dated: July 27, 2007

WOODCOCK WASHBURN LLP
Steven J. Rocci
Chad A. Rutkowski
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
Tel:    (215) 568-3100
Fax:    (215) 568-3439
**Attorneys for Plaintiff EMS Acquisition Corp.**

# EXHIBIT 3

WOODCOCK WASHBURN LLP
David J. Wolfsohn
Chad A. Rutkowski
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
Tel:    (215) 568-3100
Fax:    (215) 568-3439
**Attorneys for Plaintiff EMS Acquisition Corp.**

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMS ACQUISITION CORP., | : | |
| | : | Case No. 2:07-cv-3084-JG |
| Plaintiff | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| STRUCTURE PROBE INC., | : | |
| | : | |
| Defendant. | : | |
| | : | : |
| | : | |
| | : | |
| | : | |

### AMENDED COMPLAINT

Plaintiff, EMS Acquisition Corp., by and through its attorneys, and for its Amended

Complaint against Defendant, Structure Probe, Inc., states:

### THE PARTIES

1.      EMS Acquisition Corp.  ("EMS") is a corporation organized under the laws of the

State of Pennsylvania, with its principal place of business at 1560 Industry Road, Hatfield,

Pennsylvania .

1

2.    In a pleading in another action, Defendant, Structure Probe, Inc. ("SPI"), has

alleged that it is a corporation organized under the laws of the State of Delaware having a place

of business at 569 East Gay Street, West Chester, Pennsylvania.

## JURISDICTION AND VENUE

3.    This is an action for declaratory judgment, brought under 28 U.S.C. §§ 2201 and

2202, which action concerns a controversy arising under the Copyright Act of the United States,

as well as the Lanham Act.

4.    This Court has jurisdiction by virtue of the fact that this is a civil action arising

under 28 U.S.C. §§ 2201 and 2202 and under the Copyright Act of the United States, 15 U.S.C. §

101, et seq., as well as the Lanham Act, 15 U.S.C. §1125(a), jurisdiction being expressly

conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

5.    This Court has personal jurisdiction over SPI because, on information and belief,

SPI is present, maintains its principal place of business, and has and is conducting business,

and/or has conducted business in the Commonwealth of Pennsylvania and within this District.

6.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(c).

7.    An actual case or controversy has arisen between the parties based on SPI's

assertions that EMS unlawfully copied and used the HTML language and text from certain of

SPI's website pages in violation of the Copyright Laws of the United States, and further asserted

that EMS's alleged copying is likely to cause confusion amongst consumers, and otherwise

constitutes unfair competition under the Lanham Act. On or about May 17, 2007, SPI filed a

defective complaint for copyright infringement, federal unfair competition, and state unfair

competition under the laws of the State of New York against EMS in the United States District

Court in the Southern District of New York ("the New York Complaint").  A copy of the New York Complaint is attached as Exhibit A.

## FACTUAL BACKGROUND

### I.    EMS Acquisition Corp., Inc.

8.    EMS is a privately-held company focused on the manufacture, development, and distribution of chemicals, supplies and equipment for use in the microscopy, histology, and related fields.

9.    In addition to products it manufactures itself, EMS sells thousands of products from third party manufacturers.  These products include embedding resins, adhesives and other embedding materials for suspending specimens that are to be scanned by electron microscopes or viewed under conventional light microscopes, as well as machines designed for the cleaning, ashing, and etching of specimens.

10.    EMS operates a website, www.emsdiasum.com/microscopy/default.aspx,  in which it markets, promotes and advertises third party products sold by it.  EMS provides information regarding these products on its websites, which are often verbatim reproductions of specifications and user information provided by the third party manufacturer itself.  As this information is provided to further the sale of the third party manufacturers' products, EMS's use of this material is with the consent of such third party manufacturers.

### II.    Structure Probe, Inc.

11.    SPI has alleged in the New York Complaint that it is a manufacturer, retailer and distributor of analytical equipment and supplies.

12.    Upon information and belief, SPI sells many of the same products as EMS.

13.    SPI has also alleged in the New York Complaint that, like EMS, SPI markets, promotes and advertises these products on a website it operates, www.2spi.com. SPI provides

3

information on such products very similar to the information provided by EMS, including product specification data and user information.

**III.  SPI's False Claims of Ownership in Product Information**

14.  In the New York Complaint, SPI has alleged that it is the "creator" of "certain webpages, images, text and artwork" on its website.

15.  SPI alleges in the New York Complaint that EMS copied several of its webpages. However, the only webpages identified by SPI as having been allegedly copied by EMS relate to product specifications and user information for nine products manufactured by third party manufacturers—1) LEIT-C-Plast Carbon Cement; 2) Plasma Prep II/EMS 1050 Plasma Asher; 3) BioBond Tissue Adhesive; 4) LR White resin; 5) LR Gold Resin; 6) SPI Diffraction Standards, TEM; 7) Tempfix Mounting Adhesive; 8) SIRA Calibration Specimen Set; and 9) Biomount Tissue Section Mounting Medium. *See* Ex. A.

16.  The information that SPI claims was "copied" by EMS was in fact provided by the third party manufacturers themselves, or are nothing more than unoriginal or public domain facts and figures generally used to describe the characteristics of the products being sold by both EMS and SPI.

17.  In fact, SPI does not claim copyright ownership in any of the various product information webpages it claimed EMS "copied" except for one.  SPI claims to own the copyright in only one such product information, the Plasma Prep II User's Manual. *See* pars 15-22, Ex. A.

18.  However, SPI's "Plasma Prep II User's Manual" is in fact itself a mere copy with minor variations of a twelve year old user's manual created by March Instruments, Inc. for the "Emitech K1050X Plasma Asher Instruction Manual."

19.  Accordingly, SPI's registration with the Copyright Office of the United States is false and misleading, as it claims ownership in a work that SPI did not itself author.

4

## COUNT I

### Invalidity of Copyright/Fraud on the Copyright Office

20.     EMS incorporates by reference the allegations contained in the paragraphs above as if same were more fully set forth herein.

21.     SPI claims to be the owner of a copyright in the work entitled "Plasma Prep II User's Manual." However, the "Plasma Prep II User's Manual" is in fact a mere copy with trivial variations of the manual created by March Instruments, Inc., such that the "Plasma Prep II User's Manual" is not an original work subject to copyright protection, and SPI is not the author thereof.

22.     In SPI's filing of the Form TX with the Copyright Office on April 18, 2007, it falsely claimed that SPI was the "author of the "Plasma Prep II User's Manual," falsely claimed that the "work" was first published on December 14, 2006, and falsely claimed that SPI had made a contribution to the "Plasma Prep II User's Manual" such as to warrant copyright protection. On information and belief, SPI enclosed as its "deposit" with the Form TX a copy of the putative work that did not make clear to the Copyright Office the extent to which this "work" was authored and created by an entity other than SPI. PI and its counsel, Kenyon & Kenyon, knew that these representations were false, and made them with the intent of inducing the reliance of the Copyright Office on these representations, such that the Copyright Office would issue a registration based on these false representations.

23.     In view of the foregoing, the Court should order that SPI's copyright in the "Plasma Prep II User's Manual" is invalid and unenforceable.

24.     An actual, present and justiciable controversy has arisen between EMS and SPI concerning EMS's posting of information regarding the EMS 1050 Plasma Asher on EMS's

5

website, as SPI claims this posting infringes SPI's copyright in the "Plasma Prep II User's Manual."

25.     EMS seeks a declaratory judgment from this Court that SPI's claimed copyright in the "Plasma Prep II User's Manual" is invalid, the product of fraud on the Copyright Office, and unenforceable.

## COUNT II

### Declaratory Judgment of Non Infringement of Copyright, 15 U.S.C. § 101 et. seq.

26.     EMS  incorporates by reference the allegations contained in the paragraphs above as if same were more fully set forth herein.

27.     SPI has claimed that EMS has infringed its copyright in the "Plasma Prep II User's Manual" by virtue of EMS's posting of information regarding the EMS 1050 Plasma Asher on EMS's website.

28.     An actual, present and justiciable controversy has arisen between EMS and SPI concerning EMS's posting of information regarding the EMS 1050 Plasma Asher on EMS's website.

29.     EMS does not violate SPI's alleged rights under the Copyright Laws, or any other federal or state, statue, or common laws.

30.     SPI has suffered no damages as a result of EMS's alleged violations.

31.     EMS seeks a declaratory judgment from this Court that its posting of information regarding the EMS 1050 Plasma Asher on EMS's website does not violate any copyright allegedly owned by SPI, would, even if SPI has a valid copyright in any such material, constitute "fair use" of such material, and otherwise does not infringe any putative copyright owned by SPI.

## COUNT III

### Declaration of Non-Violation of the Lanham Act, 15 U.S.C. §1125(a)

32.    EMS  incorporates by reference the allegations contained in the paragraphs above as if same were more fully set forth herein.

33.    SPI has claimed that inclusion by EMS of embedded website links from EMS's website to SPI's website, which have since been removed, are likely to cause confusion among consumers that SPI and EMS are somehow affiliated.  *See* par 25, Ex. A.

34.    SPI has also claimed that EMS's use of product information on its website constitutes false advertising under the Lanham Act.  *Id.*

35.    The inclusion by EMS of a link to SPI's website was temporary and inadvertent, caused no actual confusion among consumers, and was never likely to cause any confusion. Indeed, if anything, SPI took sales from EMS by virtue of the link, which would have diverted viewers of the EMS website to the SPI website, to SPI's benefit and EMS's detriment.

36.    Moreover, the product information included by EMS regarding the products sold by both EMS and SPI was not copied from SPI, was objectively true, and does not otherwise constitute false advertising under the Lanham Act.

37.    Moreover, SPI has suffered no damages as a result of EMS's allegedly wrongful conduct.

38.    Moreover, SPI's Lanham Act claim is preempted by the Copyright Act.

## COUNT IV

### Declaration of Non-Violation of New York State Law

39.    EMS  incorporates by reference the allegations contained in the paragraphs above as if same were more fully set forth herein.

40. SPI has claimed that EMS violated New York State common law and New York Gen.Bus.Law §§ 349 and 350 by copying SPI's webpages.

41. Neither EMS nor SPI are located in New York, none of the acts of which SPI complains originated in New York or had meaningful effects in New York, and EMS has not otherwise availed itself of the laws of the State of New York.

42. Accordingly, New York does not apply to any of the conduct complained of by SPI.

43. The product information included by EMS regarding the products sold by both EMS and SPI was not copied from SPI, was objectively true, did not cause any actual confusion amongst consumers, and was never likely to cause any consumer confusion.

44. Moreover, SPI has suffered no damages as a result of EMS's allegedly wrongful conduct.

45. Moreover, SPI's Lanham Act claim is preempted by the Copyright Act.

## PRAYER FOR RELIEF

WHEREFORE, EMS respectfully requests that the Court:

46. Enter judgment according to the declaratory relief sought;

47. Preliminarily and permanently enjoin SPI from asserting that EMS's use of product information on its webpage infringes any rights of SPI;

48. Declare that SPI is not the author or have any copyright in the putative work entitled "Plasma Prep II User's Manual".

49. Declare the alleged copyright in the work entitled "Plasma Prep II User's Manual" to be invalid.

8

50. Declare the alleged copyright in "Plasma Prep II User's Manual" to have been procured by fraud on the Copyright Office.

50. Declare that EMS's website pages do not violate any rights of SPI under the Copyright Act, the Lanham Act, or any state statutory or common law;

51. Declare that EMS's inadvertent and temporary inclusion of a link to an SPI webpage was not likely to cause confusion between EMS and SPI or to cause mistake, or to deceive as to the affiliation, connection, or association of EMS with SPI, or as to the origin, sponsorship or approval by SPI of EMS's products and services;

52. Declare that SPI's claims under the Lanham Act and state statutory and common law are preempted by the Copyright Act;

53. Declare that New York statutory and common law is inapplicable to any claim asserted by SPI.

54. Declare that SPI suffered no damages as a result of any conduct of EMS relating to EMS's website;

55. Award EMS  its costs and expenses of this civil action together with reasonable attorneys' fees; and

56. Enter any other relief to which EMS  is entitled as a matter of law or equity, or which the Court determines to be just and proper.

9

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, EMS  hereby demands a jury trial on all

issues so triable.

Dated: September 19, 2007

(CAR 7739)

WOODCOCK WASHBURN LLP
David J. Wolfsohn
Chad A. Rutkowski
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
Tel:       (215) 568-3100
Fax:      (215) 568-3439
**Attorneys for Plaintiff EMS Acquisition Corp.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2007, a true and correct copy of the

foregoing AMENDED COMPLAINT was served by ECF or First Class Mail upon the

following:

**ATTORNEY FOR DEFENDANT,**
**STRUCTURE PROBE, INC.**

Joseph F. Nicholson
KENYON & KENYON LLP
One Broadway
New York, NY 10004

WOODCOCK WASHBURN LLP
David J. Wolfsohn
Chad A. Rutkowski
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
Tel:     (215) 568-3100
Fax:     (215) 568-3439
**Attorneys for Plaintiff EMS Acquisition Corp.**

# EXHIBIT 4



Charter One Auto Finance Corp. v. National Vehicle Imports, LLC
W.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,W.D. New York.
CHARTER ONE AUTO FINANCE
CORPORATION, Plaintiff,
v.
NATIONAL VEHICLE IMPORTS, LLC, d/b/a
National Vehicle Imports, Defendant.
**No. 04-CV-6099CJS.**

Sept. 16, 2005.

PAYSON, Magistrate J.

**\*1** By order dated November 18, 2004, the above-captioned matter has been referred to the undersigned for the supervision of pre-trial discovery, pursuant to 28 U.S.C. § § 636(b)(A) and (B). (Docket # 25). Currently pending before this Court for a report and recommendation is defendant's motion for the Court to abstain from the further exercise of its jurisdiction. (Docket # 30). For the following reasons, it is the recommendation of this Court that defendant's motion be denied.

Plaintiff, Charter One Auto Finance Corp. ("COAF"), is a Rochester, New York corporation engaged in the business of indirect automobile lending. Defendant, National Vehicle Imports, LLC ("NVI"), is a New Jersey licensed motor vehicle dealership located in West Atlantic City, New Jersey. On April 29, 2003, COAF and NVI signed a contract entitled "Master Dealer and Reserve Account Agreement" (the "Agreement"). Pursuant to the Agreement, NVI agreed to offer to COAF the opportunity to purchase financing contracts NVI had entered into with customers to whom it had sold vehicles. Upon review of the NVI contract, if COAF approved the sale, NVI would assign the contract to COAF, and the affected customer would thereafter make payments directly to

COAF. The Agreement between COAF and NVI also contained a choice of law forum clause, which stated, "[t]his agreement shall be governed by and construed according to the laws of the State of New York. The parties further agree that the state and/or *federal courts located within the State of New York shall have jurisdiction* regarding disputes arising hereunder."(Docket # 1, Ex. A at ¶ 20(b) (emphasis added)).

COAF alleges that between November 13, 2003 and July 26, 2004, NVI persuaded eight customers who had purchased vehicles with cash to sign blank financing contracts based upon representations that the contract was related to the purchase. COAF further alleges that NVI fraudulently completed the blank contracts and sold them to COAF, netting approximately $298,000 for NVI. COAF subsequently attempted to advise the eight customers of their obligations to make payments under the contracts and discovered that the customers had not financed their purchases. (Docket # 1).

On March 11, 2004, COAF filed the pending Complaint (the "Federal Complaint") alleging five causes of action: (1) breach of contract; (2) breach of duty of good faith and fair dealing; (3) breach of warranty; (4) fraud; and (5) violation of the federal RICO [FN1] statute. (Docket # 1). Shortly thereafter, on March 16, 2004, one of the eight consumers filed an action against NVI in New Jersey Superior Court, Atlantic County, entitled *Louise Morrison v.. NVI et. al.,* docket no. ATL-L-793-04.The complaint in that action alleges various claims of fraud relating to the financing contract signed at the time Morrison purchased her vehicle. The complaint further identifies COAF as an indispensable party.

> FN1. Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. § 1961, *et seq.*

**\*2** In the following month, five additional New Jersey actions were commenced relating to the alleged fraud by NVI-some by consumers who purchased vehicles from NVI, others by lenders that, like COAF, were assigned financing contracts relating to those purchases-one of which names COAF as a defendant. In several of the actions, NVI names COAF as a third party defendant and asserts

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2005 WL 2886006 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

breach of contract claims against it. By Order dated October 12, 2004, the six New Jersey cases were consolidated into one action (the "New Jersey Action") in New Jersey Superior Court. (Docket # 31). COAF, as a defendant and third-party defendant in the New Jersey Action, has asserted various cross-claims and counterclaims. In addition, on October 12, 2004, COAF filed a fourth-party complaint, naming as defendants NVI, certain of its officers and employees, and the eight consumers. (Docket # 31). The fourth-party complaint alleges the same claims as are asserted in the Federal Complaint, as well as additional state law claims.

051 Extra cent-Y found with cent-Y markup.

On May 13, 2004, NVI moved to dismiss the Federal Complaint alleging, *inter alia,* lack of personal jurisdiction and improper venue. In the alternative, NVI requested that the matter be transferred to the District of New Jersey.  (Docket # 3). NVI's motion was denied by United States District Judge Charles J. Siragusa on September 23, 2004.[FN2] In that decision, Judge Siragusa found that venue in the Western District of New York was proper under 28 U.S.C. § 1391(b) based upon the Agreement's unambiguous choice of forum clause. Judge Siragusa further denied NVI's alternative application for a discretionary change in venue pursuant to 28 U.S.C. § 1404(a). (Docket # 18). In reaching his decision, Judge Siragusa considered nine factors (the *"Hutton factors") set forth in Hutton v. Priddy's Auction Galleries, Inc.,* 275 F.Supp.2d 428 (S.D.N.Y.2003). According to the court in *Hutton,* a transfer of venue must be analyzed in light of: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice. *Id.* at 441.  (Docket # 18).

FN2. Judge Siragusa granted the motion to dismiss as to the individually-named defendants, finding that the Court lacked personal jurisdiction over them. (Docket # 18).

Reviewing the *Hutton* factors, Judge Siragusa determined that NVI had failed to establish a compelling argument for transfer of venue to New Jersey. Specifically, he found that with respect to the first, second and fifth factors, NVI had not demonstrated that it would be inconvenienced by trial in the Western District of New York. (Docket # 18 at 8). With regard to the third and fourth factors, Judge Siragusa found that the relevant documents were available in this district and that the breach, if any, occurred in New York when the credit applications were received by COAF. (Docket # 18 at 9-10). Judge Siragusa did not analyze the sixth *Hutton* factor, noting that the moving papers submitted by the parties had not identified their relative means. The seventh factor, according to Judge Siragusa, weighed in favor of venue in this district because federal courts sitting in New York are generally familiar with New York law, which is applicable pursuant to the choice of forum clause in the Agreement. (Docket # 18 at 10). Finally, Judge Siragusa determined that the eighth and ninth factors weighed against transfer of venue because the forum selection clause favored retention of the case in New York and because no public policy existed that would be contravened by enforcement of that clause. (Docket # 18 at 10).

**\*3** Notwithstanding Judge Siragusa's denial of the application for change in venue, on January 4, 2005, NVI filed the pending motion "to abstain in the exercise of further jurisdiction."(Docket # 30). COAF opposes such motion, arguing that the district court's jurisdiction over this matter has been properly established and the exercise of it should not be declined. (Docket # 39).

NVI claims that abstention is appropriate under the Supreme Court's decision in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976). Conversely, COAF asserts that consideration of the factors delineated by the Court in *Colorado River* counsels against abstention in this matter. COAF also argues that NVI has waived its right to seek abstention and is collaterally estopped from making such motion based upon Judge Siragusa's earlier decision denying a change in venue. (Docket # 39). Because, as discussed below, I find abstention inappropriate under *Colorado River,* it is unnecessary to address COAF's alternative arguments. Moreover, regardless of whether Judge Siragusa's earlier decision denying transfer of venue acts to bar NVI's current motion, the reasoning applied in that decision is equally applicable at this time and thus serves to guide this Court in considering the pending motion.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Under the abstention doctrine, a federal court may "decline to exercise jurisdiction, even though the parties satisfy all jurisdictional requirements and the dispute is justiciable." 17 James Wm. Moore et al., Moore's Federal Practice ¶ 122-1 (3d ed.1999). Abstention, however, "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States, 424 U.S. at 813.* Indeed, the Supreme Court has characterized the duty of a federal court to exercise jurisdiction even where there is a concurrent state proceeding as "virtually unflagging." *Id.* at 817. Based upon the *Colorado River* decision and its progeny, the following six factors have been identified as appropriate for consideration by a federal court in determining whether to abstain from exercising its jurisdiction: "(1) which court first assumed jurisdiction over the *res* involved in the action; (2) the relative inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order of filing for the state and federal actions; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." *Saatchi & Saatchi Bus. Comm. v. Just For Feet, Inc., 64 F.Supp.2d 207, 209-10 (W.D .N.Y.1999)* (citing *De Cisneros v. Younger, 871 F.2d 305, 307 (2d Cir.1989)).Accord, e.g., Woodford v. Community Action Agency of Greene County, Inc., 239 F.3d 517, 522 (2d Cir.2001); Bethlehem Contracting Co. v. Lehrer/McGovern Inc., 800 F.2d 325, 327 (2d Cir.1986).*

**\*4** With respect to the six factors, the Supreme Court has advised that no single factor is necessarily decisive. The test "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983); see De Cisneros v. Younger, 871 F.2d at 307.* The ultimate decision whether abstention is appropriate lies within the discretion of the district court. *Wilton v. Seven Falls Co., 515 U.S. 277, 288-89 (1995); De Cisneros, 871 F.2d at 307;Saatchi & Saatchi Bus. Comm. v. Just For Feet, Inc., 64 F.Supp.2d at 210.* Mindful of the presumption against abstention, and in view of Judge Siragusa's earlier decision, this Court will now address the six factors set forth in *Colorado River.*

1. *Exercise of Jurisdiction Over a Res:* In this matter, there is no *res* or property. Thus, as conceded by both

NVI (Docket # 31 at 9) and COAF (Docket # 39 at 10), this factor weighs against abstention. *See De Cisneros, 871 F.2d at 307;Saatchi & Saatchi, 64 F.Supp.2d at 210. See also General Star Int'l Indem. Ltd. v. Chase Manhattan Bank, 2002 WL 850012, \*6 (S.D.N.Y.2002)* ("Given that the purpose of the test is to ascertain whether 'exceptional circumstances' exist to justify the surrender of federal jurisdiction, the facial neutrality of one factor is a basis for retaining federal jurisdiction, not for yielding it"); *De Cisneros, 871 F.2d at 307* (factors not implicated weigh against abstention).

2. *Relative Inconvenience of Federal Forum:* Analysis of the relative inconvenience of the federal forum requires consideration of the following: (1) the place where the operative events occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the cost of obtaining witnesses' presence; (6) the familiarity with governing law; (7) trial efficiency; and (8) the interest of justice." *Saatchi & Saatchi, 64 F.Supp.2d at 210* (citing *AMNEX, Inc. v. Rowland, 25 F.Supp.2d 238, 244 (S.D.N.Y.1998)).*

Consideration of this factor is substantially aided by Judge Siragusa's prior decision. In denying NVI's motion to transfer venue, Judge Siragusa found unpersuasive the argument that NVI would be inconvenienced by having to defend this action in New York merely because it, and the majority of the relevant witnesses, are residents of New Jersey. Specifically, Judge Siragusa found that NVI had failed to present evidence to suggest that its witnesses would be unavailable or unwilling to participate in a trial in New York. Moreover, he held that in light of the geographic proximity of New York to New Jersey and the easy availability of transportation between the two states, any inconvenience would be slight at best. (Docket # 18 at 8-9).

**\*5** Finding the above conclusion reasonable, and having been presented with no countervailing considerations,[FN3] I find that NVI has not demonstrated that federal jurisdiction in New York will impose more than a minimal inconvenience. This factor therefore also weighs against abstention.

> FN3. In support of its motion, NVI has submitted an affidavit from one of the consumers, Louise Morrison, stating that it would be burdensome and inconvenient to travel to the Western District of New York

for deposition and trial. (Docket # 41, ¶ 6). Ms. Morrison lives in New Jersey, and notably she did not assert that she would refuse to travel to Rochester to testify. Second, it is unlikely that any deposition of her would occur in Rochester, rather than in her hometown. *See Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 155 (S.D.N.Y.1997)* ( "[t]here is a general presumption that a non-resident's deposition will be held where he or she resides or works") (citations omitted). On these facts, I agree with Judge Siragusa that the inconvenience of having to travel to New York from a neighboring state to offer trial testimony would be insubstantial.

3. *Avoidance of Piecemeal Litigation:* The desire to avoid piecemeal litigation is generally considered one of the most important factors in deciding whether abstention is appropriate. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. at 16;see also De Cisneros, 871 F.2d at 308* ("Because the state and federal issues are 'inextricably linked,' the risk of [piecemeal] adjudication is real ... and the district court properly abstained from allowing litigation to proceed in installments"); *Saatchi & Saatchi, 64 F.Supp.2d at 211* (citing *AMNEX, Inc. v.. Rowland, 25 F.Supp.2d 238, 245 (S.D.N.Y.1998)*). The concern underlying this factor is the potential that piecemeal litigation creates for "inconsistent outcomes not preventable by principles of res judicata and collateral estoppel."*Woodford v. Community Action Agency of Greene County, Inc., 239 F.3d at 524.* Where such potential exists, abstention may be appropriate, especially if it furthers the goal of "wise judicial administration," *Colorado River, 424 U.S. at 817,* that is, the conservation of judicial resources. *See De Cisneros, 871 F.2d at 308* ("the value of judicial economy ... animates *Colorado River*" ). In *De Cisneros,* for example, the Second Circuit affirmed the district court's decision to abstain, noting that a judgment in the more comprehensive state action could be given preclusive effect in the federal action, but that the converse was not necessarily true. 871 F.2d at 308. Specifically, the court found that if the plaintiff prevailed in the federal action, that judgment could be used preclusively in the state action, but that if the defendant prevailed, it could not be used preclusively because other plaintiffs in the state action were not parties in the federal action. *Id.*

Like the actions in *De Cisneros,* the state and federal actions in this case are "inextricably linked." In the New Jersey Action, COAF has filed a fourth party complaint against NVI and other defendants asserting the very same claims as are asserted in the Federal Action against NVI, as well as additional state claims. Even were COAF to withdraw that complaint as they have offered, the potential for inconsistent results, while diminished, would not necessarily disappear. *Cf. Woodford, 239 F.3d at 524* ("as a procedural matter, abstention was not needed in order to avoid duplicative proceedings because each plaintiff offered to 'stay or even withdraw' her overlapping state-court claims [ ], acknowledging the *res judicata* effect that would result from adjudication of the present claims"). In this case, COAF has also been named as a defendant and a third-party defendant in the consolidated New Jersey Action and, in those capacities, has asserted counterclaims and cross-claims against NVI, certain of its officers and employees and various consumers. Some of those claims include claims for breach of the Agreement between NVI and COAF; resolution of those claims may well depend on whether NVI did or did not defraud the consumers in obtaining their signatures on the financing documents.

**\*6** This case differs from *De Cisneros* in one significant respect, however. Unlike *De Cisneros,* both parties in the Federal Action bear similar risks relating to preclusion. *See De Cisneros, 871 F.2d at 308* (plaintiff "[c]ould prove [defendant's] liability in federal court and then be able to use the judgment preclusively in state court-but ... the inverse would not be true"); *see also Woodford, 239 F.3d at 524* ("[t]he classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in another lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties"); *General Star Int'l Indem. Ltd. v. Chase Manhattan Bank, 2002 WL 850012 at \*7* ("[i]f Chase lost in federal court, AXA and Gen Star could use that judgment preclusively in state court; however, if Chase succeeded, the state defendants ... would not be barred by the decision of this Court because they would not have been parties to the litigation"). Take, for example, the second of the New Jersey lawsuits, *Steven Frei v. NVI, et al.,* docket no. ATL-L-880-04.In that case, the consumers have sued NVI, COAF, other financing companies and certain NVI officers and employees. NVI, in turn, has asserted cross-claims against COAF and the other financing companies; COAF has also asserted cross-claims against NVI and the named officers and employees. The existence of the many claims and cross-claims between and among the many parties renders it unlikely that either COAF or NVI would be successful in seeking to apply any favorable

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 2005 WL 2886006 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

judgment in this action preclusively in the New Jersey Action. Should NVI prevail against COAF in the Federal Action, that judgment likely would not have preclusive effect in the New Jersey Action because the customers (who have sued NVI in the New Jersey Action) were not parties to the Federal Action and did not have a full opportunity to litigate in that forum. Likewise, should COAF prevail against NVI in the Federal Action, that judgment may not have preclusive effect in the New Jersey Action because the officers and employees of NVI (who are also named defendants in the New Jersey Action) are not parties in this action.

The procedural history of this case also leads me to conclude that the third *Colorado River* factor, while it weighs in favor of abstention, does not do so strongly. Here, the first of the New Jersey lawsuits was filed days after COAF filed suit here. The next three actions, which included the lawsuit referenced in the preceding paragraph by four customers against NVI, COAF, other financing companies and certain NVI officers and employees, were filed over the course of the next month. Notwithstanding NVI's knowledge of and participation in these actions, it failed to move for abstention in this action; rather, it moved not only for dismissal, but in the alternative for a change of venue to the District of New Jersey. Indeed, in the transfer motion, NVI curiously argued that considering the pendency of the four New Jersey actions, "[t]ransferring this action to the District of New Jersey would serve the best interests of judicial economy and serve to expedite all of these actions, and avoid the potential for inconsistent judgments."(Docket # 32, Ex. A at ¶ 9).

**\*7** Indeed, it was not until eight months later-after the district court had denied its transfer motion, after the court had issued a scheduling order for discovery and after *COAF had filed its pending summary judgment motion*-that NVI chose to move for abstention. Any claim by NVI that it seeks to conserve judicial resources, and thus further one of the animating policies behind abstention, is belied by its own conduct in defending this lawsuit. Under these circumstances, this third factor, while it weighs in favor of abstention, does not do so nearly as heavily as in other cases in which abstention has been determined to be appropriate.

4. *Order of Filing:* The fourth factor under *Colorado River* considers the order in which the two actions were filed. See *De Cisneros, 871 F.2d at 308.* In this matter, the Federal Complaint was filed on March 11, 2004, and the initial New Jersey Action was filed five

days later, on March 16, 2004. It is not enough, however, to consider only the chronological order of the filings. Rather, the court must consider the relative progress of the two proceedings. *See Id.*(citing *Moses H. Cone, 460 U.S. at 21;Bethlehem Contracting Co. v. Lehrer/McGovern Inc., 800 F.2d at 328;Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 211 (2d Cir.1985)*).

The parties here dispute which of the actions has progressed further to date. Notwithstanding this dispute, as of the time of oral argument, both cases were in the discovery phase. Although it is unclear what has happened in the New Jersey Action since then, a dispositive motion has been filed by COAF in the Federal Action. I find that this factor thus does not weigh in favor of abstention.

5. *Law Providing Rule of Decision:* As has already been decided by Judge Siragusa, the law applicable to the majority of the claims is that of New York State by virtue of the Agreement's law selection clause. (Docket # 18 at 10). Although New Jersey state courts are clearly capable of applying New York law, a district court sitting in New York is likely to have had significant experience with the application of New York law. In addition, the fact that one of the claims, the RICO claim, is based on federal law also weighs against abstention.

6. *Protection of Federal Plaintiff's Rights:* The final factor considers the rights of federal plaintiffs. Evidence that a federal plaintiff's rights may not be protected in state court weighs heavily in favor of exercising federal jurisdiction *De Cisneros, 871 F.2d at 309;Saatchi & Saatchi, 64 F.Supp.2d at 211.* This Court has not been presented with any evidence to suggest that the New Jersey courts are unable to protect the parties' federal rights. While this factor thus does not militate against abstention, neither does it counsel in favor of it. See *De Cisneros, 871 F.2d at 309;Saatchi & Saatchi, 64 F.Supp.2d at 211-12.*

7. *Balancing of the Factors:* Based upon a careful balancing of the *Colorado River* factors, illuminated by Judge Siragusa's prior decision to deny defendant's transfer motion, I find that abstention would be inappropriate in this matter, provided COAF withdraws its fourth-party complaint in the New Jersey Action. As already stated, abstention is warranted only in "exceptional circumstances," *Moses H. Cone, 460 U.S. at 19,* and "[o]nly the clearest of justifications will warrant dismissal."*Colorado River, 424 U.S. at 819.* On the record before me, NVI has failed to demonstrate that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                       Page 6
Not Reported in F.Supp.2d, 2005 WL 2886006 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

this case falls within the narrow class of cases in which abstention is warranted.

**\*8** For the foregoing reasons, it is my recommendation that defendant's motion for the court to abstain from the further exercise of its jurisdiction (Docket # 30) be DENIED, provided that plaintiff withdraws its fourth-party complaint. I further recommend that the district court, should it adopt this recommendation, afford plaintiff 14 days from the date of its decision within which to do so.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b), 6(a) and 6(e) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g.* *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir.1988).*

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., et al., 838 F.2d 55 (2d Cir.1988).*

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."*Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection .*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

IT IS SO ORDERED.

W.D.N.Y.,2005.
Charter One Auto Finance Corp. v. National Vehicle Imports, LLC
Not Reported in F.Supp.2d, 2005 WL 2886006 (W.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

EMS ACQUISITION CORP.,

        *Plaintiff*,

v.

STRUCTURE PROBE, INC.,

        *Defendant*.

Civil Action 07-3084 (JG)

---

### DEFENDANT STRUCTURE PROBE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK

**BLANK ROME LLP**

Timothy D. Pecsenye
Emily J. Barnhart
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103-6998
(215)569-5619
(215)832-5619 (fax)

Of Counsel:
KENYON & KENYON LLP
Joseph F. Nicholson
Michael J. Freno
One Broadway
New York, New York 10004
(212) 425-7200

*Attorneys for Defendant*
*Structure Probe, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ........................................................................................2

ARGUMENT ...........................................................................................................4

    I.     THE FIRST-FILED RULE APPLIES ....................................................4

    II.    NEITHER COMPELLING CIRCUMSTANCES NOR  STRONG CONTRARY CONVENIENCES UNDERMINE  THE APPLICATION OF THE FIRST-FILED RULE .......................................................................................7

CONCLUSION .........................................................................................................9

128109.00601/11712694v.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Home Products v. Johnson & Johnson*, 668 F. Supp. 446 (E.D. Pa. 1987) .............................................................................................................5

*American Telegraph & Telegraph Co. v. MCI Communications Corp.*, 736 F. Supp. 1294 (D.N.J. 1990) ....................................................................................5

*Ballard Medical Products v. Concord Laboratories, Inc.*, 700 F. Supp. 796 (D. Del. 1988) ...........................................................................................................5

*Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19 (1960).......................................4, 8

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941)......................................1, 5

*E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988), *cert. granted in part,* 488 U.S. 992 (1988), *aff'd,* 493 U.S. 182 (1990)................1, 4, 5, 7, 9

*Ferens v. John Deere Co.*, 494 U.S. 516 (1990)....................................................................8

*Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631 (3rd Cir. 1961) .............6

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3rd Cir. 1995)....................................7

*Keating Fibre International Inc. v. Wyerehaeuser Co.*, 416 F. Supp. 2d 1048 (E.D. Pa. 2006)....................................................................................................6

*Moore Corp., Ltd. v. Wallace Computer Services, Inc.*, 898 F. Supp. 1089 (D. Del. 1995) ...........................................................................................................7

*Smith v. McIver*, 22 U.S. 532 (1824) .................................................................................4

*Todd Shipyards Corp. v. Cunard Line Ltd.*, 708 F. Supp. 1440 (D.N.J. 1989) ..................5

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ......................................................................4

*Vukich v. Nationwide Mut. Ins. Co.*, 68 Fed. Appx. 317 (3rd. Cir. 2003) ..........................6

## FEDERAL STATUTES

28 U.S.C. §§ 1391...............................................................................................................2

28 U.S.C. § 1404(a) ...................................................................................................1, 4, 7, 8

# MISCELLANEOUS

Federal Rule of Civil Procedure 13(a) ...................................................................6

iii

## INTRODUCTION

Defendant, Structure Probe, Inc., ("SPI"), a Delaware corporation, seeks an order transferring this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York, where an earlier and first-filed related action against EMS Acquisition Corp. ("EMS") is pending, namely *Structure Probe Inc. v. EMS Acquisition Corp. (d/b/a, Electron Microscopy Sciences)*, Civil Action 07-3893 (hereinafter referred to as the "New York Action").

EMS is forum shopping. When SPI discovered that EMS had copied large portions of its copyright protected website and passed the content off as its own, SPI sued EMS, filing a complaint in the Southern District of New York on May 17, 2007, raising counts of copyright infringement, unfair competition, and state law misappropriation. After SPI informed EMS of the New York Action, EMS filed this retaliatory action on July 27, 2007, seeking a declaratory judgment to negate exactly SPI's claims in the New York Action. EMS's lawsuit is a purely tactical maneuver designed to skirt Plaintiff's choice of forum, where both parties conduct substantial business. The first-to-file rule controls. *See E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988) ("Nearly fifty years ago, this court adopted what has become known as the 'first-filed' rule. We concluded that 'in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" (quoting *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941))), *cert. granted in part,* 488 U.S. 992 (1988), *aff'd,* 493 U.S. 182 (1990). EMS's lawsuit creates duplication, unnecessarily burdens judicial resources, and poses the risk of inconsistent adjudications by both this Court and the District Court for the Southern District of New York. Accordingly, this Court should grant SPI's motion to transfer.

## STATEMENT OF FACTS

SPI, which is incorporated in Delaware, is a manufacturer, retailer and distributor of laboratory supplies, accessories, and equipment related to microscopy and microanalysis, *e.g.*, membrane window grids for scanning electron microscopes.  Through its website, SPI markets, promotes, advertises, and sells its products throughout the United States, including throughout New York.  To advertise its products, SPI invests substantial labor and incurs substantial costs in creating webpages to showcase its products.  These webpages contain original images, text, and artwork which enjoy copyright protection.

EMS is a direct competitor of SPI.  Recently, SPI discovered that EMS had gone to SPI's website, <www.2spi.com>, and copied wholesale the text, HTML source code, and images of certain of SPI's webpages, and inserted that content into EMS's own webpages.  SPI discovered this because certain pages copied by EMS onto its own website still contained links to other SPI webpages.

On May 17, 2007, SPI filed a complaint in the Southern District of New York against EMS seeking damages and injunctive relief, asserting copyright infringement, federal unfair competition, and state unfair competition under the laws of the State of New York concerning EMS's systematic copying of SPI's webpages to its own website, <www.emsdiasum.com> ("EMS website").  A copy of SPI's complaint is attached as Exhibit 1 to the Declaration of Timothy D. Pecsenye ("Pecsenye Decl.").[1]  SPI demanded relief for, *inter alia*:

- EMS's willful infringement of SPI's copyrights, including that of the "SPI Plasma Prep™ II User's Manual", on the EMS Website through copying, distributing, advertising, and posting works authored and owned by SPI;

---

[1]     Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. §§ 1391 and 1400, because, *inter alia*, EMS and SPI conduct a substantial amount of business in New York, and both continue to have a substantial impact in the State of New York and in the Southern District of New York.

- 2 -

- EMS's commercial advertising and promotion of products (*e.g.*, EMS #12667) through false, misleading, and confusing indication of SPI's sponsorship, origin, and endorsement of its products by embedding URL links to the SPI Website, thereby creating a likelihood of confusion by consumers, who may wrongly assume that SPI is affiliated with EMS or that SPI sponsors or otherwise approves of EMS's use of SPI's trade dress, trademarks, and website; and

- EMS's bad faith misappropriation of SPI's skill, expenditures, and labor through commercial advertising and promotion of products by copying SPI's works, including webpages and text from the SPI Website, thereby creating a likelihood of confusion by or deception of consumers as to the origins of the products for which EMS has copied SPI's works.

Immediately after filing its complaint, SPI contacted EMS and demanded that EMS take down certain webpages and demanded more information on the extent of the theft. In the hope of resolving the dispute without litigation, SPI did not initially serve the complaint, waiting to determine whether EMS would cooperate.

On July 27, 2007, fully cognizant of SPI's pending New York Action, EMS filed a retaliatory and purely tactical complaint in the U.S. District Court for the Eastern District of Pennsylvania, *EMS Acquisition Corp. v. Structure Probe Inc.*, Civil Action 07-3084 (hereinafter referred to as the "Pennsylvania Action"). In EMS's complaint, it sought a declaratory judgment mirroring SPI's claims in the New York Action, namely, that its conduct did not constitute a violation of U.S. copyright law, did not violate the Lanham Act, and did not violate New York state statutory and common law.[2] As it was evident that EMS was unwilling to cooperate, on July 30, 2007, SPI served upon EMS its complaint for the New York Action.

It is indisputable that EMS's complaint addresses the same matters initially raised by SPI in the New York Action. At issue in both cases will be, *inter alia*, EMS's infringement of SPI's copyrights, SPI's false designation of origin claims, SPI's claims of conversion and

---

[2]     SPI filed an amended complaint on September 19, 2007.

misappropriation under common law.  The same documentary evidence and witnesses will be at issue in both cases.

## ARGUMENT

This is a classic first-to-file situation.  As SPI filed first, the Eastern District of Pennsylvania should transfer this case to the Southern District of New York, to be consolidated with the New York Action.  *See Smith v. McIver,* 22 U.S. 532, 535 (1824) ("In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it."); *see also E.E.O.C.,* 850 F.2d at 971 ("Nearly fifty years ago, this court adopted what has become known as the 'first-filed' rule. We concluded that 'in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'").  The first-filed rule "gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court," *E.E.O.C.,* 850 F.2d at 971-72, and thus, compels a transfer of this action to the Southern District of New York, where an earlier lawsuit between the same parties and with issues identical on all four corners is pending.

## I.    THE FIRST-FILED RULE APPLIES

"For the convenience of parties and witness, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of this provision is to "prevent waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense….'"  *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 26, 27 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.")).

- 4 -

If two actions involving the same parties and substantially identical issues are pending in

different districts

> [t]he economic waste involved in duplicating litigation is obvious.
> Equally important is its adverse effect upon the prompt and
> efficient administration of justice. In view of the constant increase
> in judicial business in the federal courts and the continual necessity
> of adding to the number of judges, at the expense of the taxpayers,
> public policy requires us to seek actively to avoid the waste of
> judicial time and energy. Courts already heavily burdened with
> litigation with which they must of necessity deal should therefore
> not be called upon to duplicate each other's work in cases
> involving the same issues and the same parties.

*Crosley*, 122 F.2d at 930.  Further, "invocation of the rule will usually be the norm, not the

exception. Courts must be presented with exceptional circumstances before exercising their

discretion to depart from the first-filed rule."  *E.E.O.C.*, 850 F.2d at 979.

Courts routinely invoke the first-filed rule to transfer second-filed lawsuits involving the

same parties and same or similar issues to the district of the first-filed lawsuit,  *See, e.g.,*

*E.E.O.C.,* 850 F.2d at 971 (invoking the first-rule in the context of declaratory judgments);

*American Home Products v. Johnson & Johnson,* 668 F. Supp. 446 (E.D. Pa. 1987) (transferring

second filed false advertising claim to forum of first-filed action); *American Tel. & Tel. Co. v.*

*MCI Communications Corp.*, 736 F. Supp. 1294 (D.N.J. 1990); *Todd Shipyards Corp. v. Cunard*

*Line Ltd.*, 708 F. Supp. 1440 (D.N.J. 1989); *Ballard Medical Products v. Concord Laboratories,*

*Inc.*, 700 F. Supp. 796 (D. Del. 1988).

The first-filed rule applies to the present case because SPI filed an earlier lawsuit against

EMS in the Southern District of New York (filed May 17, 2007) which involves identical subject

matter to that presented in this action (filed July 27, 2007).  The claims in each complaint relate

to the infringement of copyrighted works and unfair competition, and they arise out of EMS's

use of the material from SPI's website.  The witnesses and documents used to support the claims

- 5 -

in the New York Action will be material, relevant, and essential in EMS's second-filed action. Moreover, there will likely be significant overlap with respect to third party and expert discovery related to EMS's false designation of origin.  Unless the Pennsylvania Action is transferred, there will be a complete duplication of efforts in, *inter alia*, document production, witness depositions, and motions, as well as at trial.

EMS could and should have brought its allegations as counterclaims in the New York Action.  *See, e.g., Keating Fibre Int'l Inc. v. Wyerehaeuser Co.*, 416 F. Supp.2d. 1048 (E.D. Pa. 2006) (court transferred case when it determined that the allegations in the second-filed action should have been raised as compulsory counterclaims in the first-filed action).  Federal Rule of Civil Procedure 13(a) states that a claim is a compulsory counterclaim "if it arises out of the transaction of occurrence that is the subject matter of the opposing party's claim. . . ."  There does not need to be precise identity of issues and facts between the claims and the counterclaim, rather they must only be logically related.  *Vukich v. Nationwide Mut. Ins. Co.*, 68 Fed. Appx. 317 (3rd. Cir. 2003).  The courts have found that "a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts."  *Id*. (quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3rd Cir. 1961).

There can be little question that EMS's claims brought before this Court involve the same conduct and activities that is the subject matter of the claims brought by SPI in the Southern District of New York.  The basic controversy is whether EMS infringed SPI's copyright, stole SPI's webpages, and created confusion in the marketplace as to the origin of SPI's material. Accordingly EMS's claims constitute compulsory counterclaims that should be brought in the Southern District of New York.  If allowed to proceed, this action will undoubtedly create double

- 6 -

document productions, depositions, and motions – wasting judicial resources, as well as those of the parties.

II.   **NEITHER COMPELLING CIRCUMSTANCES NOR STRONG CONTRARY CONVENIENCES UNDERMINE THE APPLICATION OF THE FIRST-FILED RULE**

Absent exceptional circumstances to the contrary, the prevailing standard is that the first-filed rule should apply: "Invocation of the rule will usually be the norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." *E.E.O.C.* 850 F.2d at 972, 979; *see also, e.g., Moore Corp., Ltd. v. Wallace Computer Servs., Inc.*, 898 F. Supp. 1089, 1099 (D. Del. 1995). To determine whether it is appropriate to transfer venue, the Courts may consider the several factors, including, the convenience of the parties, the convenience of the witnesses, the interests of justice and any other relevant factors when deciding a motion to transfer. 28 U.S.C. § 1404(a); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995).

In this case, there are NO exceptional circumstances that would justify abrogating the first-filed rule. New York is just as convenient as the Eastern District of Pennsylvania. As SPI has chosen New York to resolve the dispute with EMS, it is clearly convenient for SPI. As for EMS, New York is not on the other side of the country from their principal place of business. EMS distributes its products globally, sells products throughout the United States through its website, and like SPI, conducts a substantial amount of business within the state of New York, including substantial sales and importing goods into New York. *See* Pecsenye Decl. at Exhibit 2. (http://www.emsdiasum.com/ microscopy/company/about.aspx (last visited Sept. 19, 2007) ("we feel that our web site should not only be a vehicle for sales but an instrument of reference and assistance.")). EMS admits that between 100 to 150 its customers are located in New York. *See*

- 7 -

Pecsenye Decl. at Exhibit 3 at ¶ 9.  Although EMS (which is principally located in Hatfield, Pennsylvania) is technically closer to Philadelphia (approximately 35 miles), it is just 90 miles from New York City.  EMS would be hard-pressed to argue that a distance differential of 60 miles constitutes a major inconvenience.

Whether the case is litigated in New York or Pennsylvania, documents and discovery responses are typically produced electronically these days, and it would be no more burdensome to have both parties send the necessary discovery responses to New York as opposed to Pennsylvania.  As for witnesses, it is customary for deponents to be made available at each party's law firms' office:  EMS's witnesses would probably be deposed in Pennsylvania in either the New York or the Pennsylvania Action, and SPI's witnesses will be deposed in New York.

Furthermore, judicial economy dictates the transfer of this case to New York.  As the U.S. Supreme Court pointed out in *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990), the "interest of justice" will be served by transfer, if transfer of an action would obviate having two actions involving the same or similar issues proceeding in different districts.  In this case, to permit EMS to duplicate the litigation of substantially the same issues being tried in the Southern District of New York "leads to the wastefulness of time, energy and money that Section 1404(a) was designed to prevent."  *Id.* at 531 (quoting *Continental Grain*, 364 U.S. at 26 (1960)).

Finally, it is important to acknowledge the inequities of EMS's conduct.  Not only did EMS copy SPI's website, but also, rather than defend itself in the New York Action, EMS persists in its strong-arm tactics by trying to make this dispute as expensive as possible for SPI.  EMS appears to have filed the Pennsylvania complaint merely to inconvenience SPI.  As any decision to transfer rests on equitable considerations (including SPI's right to bring the initial

action in the forum of its choosing), SPI asks the Court to consider EMS's conduct in frivolously duplicating lawsuits.  *E.E.O.C*, 850 F.2d at 977.

As the Third Circuit has observed, it is rare for a court to find the balance of conveniences so one-sided as to impede the application of the first-filed rule.  *Id.* at 976.  This is certainly not one of those cases.

## CONCLUSION

For the foregoing reasons, SPI respectfully requests this Court transfer this action to the United States District Court for the Southern District of New York.


Dated:  October 9, 2007

Respectfully submitted,

BLANK ROME LLP


By:___/s/ /Timothy D. Pecsenye/_____
    Timothy D. Pecsenye
    Emily J. Barnhart
    One Logan Square
    130 N. 18th Street
    Philadelphia, PA 19103-6998
    (215)569-5619
    (215)832-5619 (fax)

    *Attorneys for Defendant*
    *Structure Probe, Inc.*

Of Counsel:
KENYON & KENYON LLP
Joseph F. Nicholson
Michael J. Freno
One Broadway
New York, New York 10004
(212) 425-7200

128109.00601/11712694v.1